Mr. Medicine Horse was convicted following a jury trial of aggravated sexual abuse. In this appeal, he's raised two issues, one, the denial of his suppression motion, and the second issue was the district court's decision to admit other acts of sexual abuse during his trial. I'd like to concentrate on the latter issue, that is, the admission of the prior act testimony. The district court allowed the government to introduce evidence from four witnesses. Two of the witnesses, let's just call them G and D, testified to allegations that had occurred in one case at least 45 years ago and in the other case at least 50 years ago. Another witness was allowed to testify, a little boy was allowed to testify to acts of abuse that were different from those in which the defendant was on trial, in that the defendant was on trial for molesting his granddaughter, and the little boy testified to acts that had been perpetrated against him. The district court also allowed a psychologist to testify, really cumulative. And the little boy that you're talking about, was that the twin? They were twins, I believe. Okay. I believe that's correct. And Dr. Cerise, the psychologist, was allowed to testify cumulatively to what the little boy testified to and testified to statements the little boy made in therapy. The district court allowed this evidence based upon its findings that it showed a similar pattern, that it involved prepubescent, both the act for which Mr. Messenhorst was on trial and these other acts involved prepubescent children. They involved things like touching the buttocks and that the events occurred while the children were alone. Let me ask you this. Let's suppose, for the sake of discussion, we agree with you that these were too remote. Let's just assume that for the time being. Didn't your client confess on audio tape? He confessed to touching the victim one time, and then he testified at trial that he'd been, similarly to what he testified to in the suppression hearing, that he'd been badgered and pushed to make that admission, and he just made the admission to get out of there. I've got to say, I'm troubled by the remoteness of these priors, even though the rule says any child molestation can come in. But when you juxtapose it to the recording where he basically admits to this, I'm having a hard time finding why it's, you know, why it's not harmless. Well, I think it's harmless just because of the powerful nature of particularly the two women. Yeah, I know, but I mean, his confession is even more powerful than that, isn't it? Confession is powerful evidence. I mean, if the guy confesses and they got it, this is not just a cop saying this is what he told me. I've got a CD here that I listened to. I mean, you know, you can hear it with your own ears that he confesses to it. Okay, so. Well, but there was, you know, as I stated, he did testify, and assuming that testimony would be believed, that he felt pressured into making those statements. Well, his pressure argument, I mean, obviously you've challenged that, but don't you think it's significant that we're talking about a former law enforcement officer, and that's one of the factors in whether, you know, what you, what you, I think, described as confrontational and accusatory questioning, isn't that a little bit different with a former law enforcement officer, and knowing exactly why they're doing these things, that later claims, well, yeah, that I just felt pressure to falsely confess? It could be in some cases, but also there were the aggravating factors of this blood pressure was going up, the fact, you know, those, those sorts of things. He was elderly, in poor health, and he testified, he just felt like he was going to have a heart attack, and so he felt like he needed to say anything to get out of there. Well, on, if, when we look at the priors, that in terms of, the court did not admit everything, is that correct? I mean, the court, so, and we're reviewing it for abuse of discretion. That's correct. And so, I view your strongest argument on the remoteness, but the court, but when we, the court didn't let everything in, and I think you wouldn't have to agree, but I think that there are a number of similarities, if we don't look at, between the, if we're not looking at the remoteness, there are a number of similarities between these events, and the victims were all siblings, they were related by marriage to Mr. Medicine Horse, the victims were all five or six years old at the time of the abuse, Mr. Medicine Horse engaged in similar sexual acts with the victims, and Medicine Horse was alone with the victims at the time. So that, it seems that the court imposed the proper, you know, had the law right in terms of looking at them, and looked at it, and wrestled with the remoteness, and didn't admit everything, but, and if we're reviewing for abuse of discretion, a lot of this is that, you know, your client isn't like someone that doesn't have priors, you know, they are, they are pretty, they're pretty relevant, so when we're weighing the remoteness, what do you say about that? There isn't any, I don't think there's anything specifically that says how old is too old, but this is, they're old. Right, right, I would say I haven't found a case with allowed incidents this far back in time, but as far as, well. But these people never even, they didn't testify against him back then, right? They somehow, when this recent thing comes out, then they decide, well, to come forward, right? That was their testimony, as I recall, that they decided then to come forward after they, they learned that Mr. Medicine Horse had been charged with this. But the one witness that wasn't allowed to testify, that was primarily due to the dissimilarity. I think that she was older, she was, in fact, maybe a grown woman, or late teenage years, or something like that. The, as far as the other factors that the district court cited, such as their relative age, the fact that they were related to involve sexual acts, and it happened alone. So many of those things are inherent, just in the nature of sexual abuse to begin with. I mean, to do it when you're alone, where you can't be seen, child sex abuse naturally involves younger children, normally. Well, no, it doesn't. The age of the child is a factor, because in terms of, if they were teenagers that were talking about 5- or 6-year-olds, I mean, that, I think that would be a dissimilarity, if you're talking, you know, because a 16-year-old can, it could be a crime, but it looks like, it may look like a woman, as opposed to a 5- or 6-year-old, no way, no how, does that, you know, that's, that is a different focus on the pedophilia, and the age of the victim is a similarity that is, can be fairly significant. But I guess my point is, is that in general, when you're talking about child sexual abuse, you're talking about younger children, and so I take your point, that we would technically call child sexual abuse something that maybe happened with a girl who's 15 or 16, but normally when we think about it, we think of it as the younger children. And the other factor is the fact that, as I stated, they were alone. No, I mean, people that commit these types of crimes a lot of times have specific age differences, and someone that would have sex with a teenager isn't the same person that would necessarily have sex with a 5- or 6-year-old. I mean, the 5- or 6-year-olds, you look at them in court, and they look like these little tiny things that their feet don't even touch the ground, and they don't look anything like an adult. I take your point, and of course, I guess, with regard to the little boy, as I recall, he was significantly younger than 6-months, 6-years-old, so... What was the defense in the case? What was the defense in the case? Denial. He took the stance that I didn't do it? Yes, sir. Even denial as to what he'd confessed to? Yes, he... The remoteness in time, I think, troubles all of us to some degree or another, and there are two points as to which it would be troublesome. Number one, does the remoteness in time cast doubt upon the truthfulness of the testimony? Right. And number two, even assuming that the testimony is truthful, and that he did these acts, these priors, well, people change. Now, the literature tells us that child molesters actually tend not to change. Was there any evidence introduced at trial at all about characteristics of child sex offenders? No, I don't believe so. I mean, if such evidence is available, and I read some of the record and didn't read all of it, I would have been surprised, actually, had it been introduced. But as I look at the reliability of the recounting of these described sexual abuse from some years ago, this doesn't look to me like it's not a case of recovered memory, it's not a That was their explanation. I'm out of time. Thank you. Good morning, Your Honors. Leif Johnson for the United States. Judge Fletcher, I'd like to go right to your issue on the remoteness here. Both the Second Circuit and the Tenth Circuit have held that there is no bright line rule, as you mentioned, Judge Callahan. In this case, the Tenth Circuit has allowed prior acts in as old as 40 years, and in another case, 30 years. Obviously, this is out there. And it's reviewed for abuse of discretion. And those two cases, it was the Benally case that the defense cites and the Larson case that discussed this issue. And in discussing the Court's exercise of discretion in that regard, the Court's described it as you did, Judge Fletcher.  And it's still probative of the defendant's character, right, whether he's changed over time. In this case, the district court said, look, this is so similar, it's very similar. So the relevance part of that, of that 403 balancing test, is very high. Are they similar? As I understand it, he was charged here with touching with his hand the private parts of this child. Yes. G-M-B-D-S testified to oral sex, not touching with the hand. D-J-S-J testified to intercourse, and the other one was a little boy. Yes, Your Honor. It seems like different kinds of acts on the, you know, the Pantheon of Child Molestation they don't seem like. It actually wasn't, though, Your Honor. What we had was originally that the victim here said, he touched my private parts. And that was essentially the confession that the defendant made, I touched her private parts. And then through the therapist, we learned that, in fact, through the course of therapy, the child divulged that she had been raped seven times and that she had been forced sodomy and that's not what he was charged with. That's not what the defendant was charged with, but that comes out in the course of the therapy and the judge lets that in. And he lets that in to give some flavor to the similarity to the past events. And in fact, it turns out that the past events were very similar to that. There was forced sodomy and there was rape. The actual age of the child, Judge Callahan, the judge found to be important and probative. And I think the reason for that is not only the age, but the relationship to the family. The defendant here demonstrated in the past that he could not only overwhelm these young children of that age, but that he could convince them not to tell, which he did, and they didn't tell for 50 years, because of their relationship to the family, because he pressed upon them their need. But in terms of the reliability of these being so remote, what did these people know about what the others had said and how much had they they didn't report to the police, right? All of these remote things, they don't come forward until the case before us comes about, right? Yes. And the rationale is basically like, okay, this guy just isn't going to get away with it because he's been doing this and he did it to other people. We never reported, but we're not going to let him continue to do it. That's the rationale. That being said, you have two sets of priors, right? Yes. And do they, had they talked to each other or, I think, one set of victims had told, they didn't know at the time that they were both molested, but they did at some point, maybe 10 years later? Yes. How do all these people, what do they know of each other? Well, they're sisters, right? And so the one sister testified that she was molested when she was six in the attic and was forced to, was actually raped. And then six years later, in the same attic, her sister was cornered by the defendant and forced sodomy. So those two situations didn't occur simultaneously. The sisters didn't know that the other had had that problem until much more recently. And I think one of them testified that it was in a trial of another sex abuse case where it came out and they discussed this, and then they realized that they had had a common experience. And so, Your Honor, obviously, that's barely, as the district court found, very similar and probative in this case. And, you know, obviously, we have a young child, six years old, same age, and a sibling that were also abused in almost exactly the same fashion. And the defendant used the same threats against them not to speak, right, threats that had worked before he imposed or tried to impose this time. It didn't work because the child went to the doctor and it was discovered eventually. Finally, Your Honor, I want to address one of the issues that you raised, Judge Silverman, which is this harmlessness thing. It's a two-edged sword here. This evidence was admitted because it was necessary, because this young child had, you know, her testimony was fairly vague about what happened to her. She couldn't go into all the details. And, in fact, what few details she went into actually were contradicted by the confession that the defendant made. The defendant said, it happened in June, and I touched her when we were sitting outside, and the victim said it happened in the wintertime, and it was in the bedroom. Right? There was some discrepancy there that would have gone to her credibility, you know, had the confession, you know. And then, of course, the defendant challenged the confession. And as the courts have noted in some of these other cases, like the Larson case and like LeMay, there was no physical evidence. There were no hairs or semen or anything else that could be tested to link these two. So as I hear you arguing, you're telling us if it was error to admit it, it was not harmless. What I'm telling you, it was necessary. I think, I think. I'll let that be not harmless. Yes. So in order to sustain your position, we have to hold, and I'm just trying to understand what you're telling us, in order to sustain your position, we have to hold that it was not an abuse of discretion to admit the priors. I think there is some room between finding it was necessary, but yet still finding that it was harmless. I think there is room between those standards. But I want to be fully up front with the Court. One of the reasons that this was admitted is because the Court found it necessary. And, you know, there were those discrepancies in the testimony. And the defense here, as you mentioned, Judge Fletcher, was denial. He said he had an alibi. He denied his confession. So he's clearly attacking everything about it, and the credibility of the child is directly at stake. That's his defense. So he's not allowed to just be like nothing's ever happened? Excuse me? So he doesn't get to be cloaked. I mean, in the old days, they would say cloak like a minister or like a priest, but that's not a good thing anymore. So, yeah, the uh When the Second Circuit, and particularly the Tenth Circuit, I think the Tenth Circuit in the Vinali case and in an earlier case, Meacham, discussed this issue of remoteness. I think that's really one of the leading decisions. And in that case, they relied, as this Court did in LeMay, on the congressional comments that accompany the rule. And one of those comments by Congressman Molinari, and I'm going to quote it here, was no time limit is imposed on uncharged offenses for which evidence may be admitted, because as a practical matter, evidence in other sex offenses by the defendant is often probative and properly admitted, notwithstanding substantial lapses in time. We acknowledge that this probably pushes the limit on that, but this is reviewed for abuse of discretion, and there were great similarities there. And given the necessity, we think that the district court's decision to weigh the similarities and the relevance over remoteness was not an abuse of discretion. Thank you. Roberts. Mr. Ness, you are over your time. We'll give you a minute if you want to respond, if you can give it to a minute, please. Ness, Jr. I'll just, I think, add one more thing, or maybe a couple of things. You know, one of the problems and one of the concerns of remoteness is it really puts the defendant in a box. They try to contest something that someone's coming back 50 years later said happened. I mean, he can't really investigate those things. He can't, it's difficult, if not impossible, to try to launch a defense against those kinds of allegations. Well, I guess they're saying on the other side, the necessity of not letting someone escape their past to deny things and cloak themselves when there are other incidents out there. So how do we balance that? Well, remember, this comes in in the case in chief. And so I think for a defendant to put on a... So if they had waited until your client strictly flat out denied it, they would have a better argument in rebuttal? Oh, I would think so. And that may, I mean, you know, we constantly make decisions on whether or not to have a client testify or say something, because, you know, I know if you do that, it comes back to bite you half the time in criminal cases. And so here this comes in in the case in chief, and there wasn't, the client hadn't even cloaked himself in the preacher's robe by that point. Roberts. Thank you very much, gentlemen. The case just argued is submitted to order. Judge Calhoun, do you want to take a break now? Okay.
judges: Silverman, Fletcher, Callahan